AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Maryland

| | | |
|---|---|---|
| United States of America<br>v.<br>JOSEPH OSIOMWAN<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  **12-2295SAG** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   May 2, 2012 through May 3, 2012   ~~in the county of~~ _____ in the _____ District of   Maryland  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sec. 846 | Conspiracy to Distribute Controlled Substances, to wit: heroin |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

TFO Brian Shutt, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 4, 2012

_____
*Judge's signature*

City and state:    Baltimore, Maryland        Stephanie A. Gallagher, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### I.   AFFIANT AND EXPERTISE

1.   Task Force Officer Brian Shutt, after being duly sworn, states as follows: I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2.   I have been a sworn police officer with the Baltimore City Police Department since June 20, 2002 and am currently assigned to the Violent Crime Impact Division, HIDTA Task Force. Prior to my employment with the Baltimore City Police Department, I was a sworn Deputy Sheriff with the Cecil County Sheriff's Office from June 1999. While employed as a law enforcement officer, I have held positions within the Patrol Division, and the Criminal Investigative Division. I have completed two separated six-month basic Police Academies that included classes pertaining to Controlled Dangerous Substances (CDS). I have also attended more than ten advanced investigative courses. Prior assignments with the Baltimore City Police include uniform patrol division in the Eastern District, and also the Eastern District Drug Unit. I have personally conducted and participated in numerous investigations involving criminal activity including but not limited to controlled substances, violent crime, and firearms violations. I have participated in the arrest of over 800 persons for narcotics, violent crime, and/or firearms violations and have authored and/or executed more than 300 Search and Seizure Warrants relating to narcotics, violent crime, and/or firearms violations.

3.   This affidavit is being submitted in support of an application for a criminal complaint charging

    a.  **Joseph OSIOMWAN (OSIOMWAN); and**
    b.  **Larry BROWN, a/k/a, "Fat Dinky" (BROWN)**

(collectively "the Defendants") with a violation of Title 21 of the United States Code Section 846, to wit conspiracy to distribute and possess with the intent to distribute one hundred grams or more of heroin.

    4.    Based on the fact presented herein, there is probable cause to believe that the Defendants have committed such and offense. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging the Defendants with the offense of conspiracy to distribute heroin, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated. Finally, I have included in this Affidavit my interpretation of communications between the Defendants that were intercepted, pursuant to court orders authorizing the interception of various communications among the Defendants. These interpretations are based on my training and experience. I have placed in brackets my interpretation of certain phrases or words used by the Defendants.

### III.   PROBABLE CAUSE

    5.    In February of 2011, the DEA commenced a wiretap investigation of the OSIOMWAN DTO. The DEA began intercepting the telephone conversations of William

CHRISITIAN (CHRISTIAN)[1] over their cellular telephones. Based upon conversations intercepted over CHRISTIAN's phone, law enforcement identified CHRISTIAN as a wholesale supplier of heroin, and that one of his sources of supply was BROWN. Law enforcement then began the interception of BROWN's cellular phone. Based upon intercepted conversations over BROWN's phone, law enforcement determined that BROWN's source of supply was OSIOMWAN. Law enforcement then obtained state court authorization to intercept OSIOMWAN's phone.

6. On March 18, 2012 at approximately 1:44 p.m., BROWN made an outgoing call to cellular telephone number (443) 224-5706, subscribed to BILL BLASS, PO BOX 54988 IRVINE, CA 92619, being used by Roger WILLOUGHBY. BROWN asked, "How you doing my friend?" WILLOUGHBY replied, "What, you gave up on me?" BROWN replied, "Nah, I thought maybe you went somewhere." WILLOUGHBY answered, "Nah, I told you I'm trying to get through what I was doing [finishing selling previously obtained heroin]." BROWN stated, "Ok yeah. Well I understand. What are you up to?" A casual conversation continued until BROWN asked, "When are you coming out, tomorrow?" WILLOUGHBY stated, "Yeah. Why you got some good news [do you have heroin]?" BROWN stated, "Always." WILLOUGHBY responded, "Alright, I'll come talk to you tomorrow."

7. I believe through my training and experience that during this call BROWN was asking WILLOUGHBY why he had not purchased more heroin from him [BROWN]. WILLOUGHBY responded, "Nah, I told you I'm trying to get through what I was doing." I believe WILLOUGHBY was telling BROWN that he still had heroin and that he was trying to sell before he met with BROWN to purchase more heroin. I believe that when WILLOUGHBY

---

[1] On April 27, 2012, as part of this investigation, CHRISTIAN was arrested during the sale of approximately 10 grams of heroin. CHRISTIAN was charged in the state system with possession with the intent to distribute heroin.

asked, "Yeah. Why you got some good news?" and BROWN responded, "Always" that WILLOUGHBY was asking BROWN if he had obtained a new supply of heroin and BROWN was letting WILLOUGHBY know that he had.

8. On March 19, 2012 at approximately 11:50 a.m., BROWN received and incoming call from WILLOUGHBY. During the call WILLOUGHBY stated, "Hey, I'll be there in about two minutes." BROWN answered, "Ok, alright."

9. On March 19, 2012 at approximately 12:00 p.m., surveillance was established at Woodland Motors, located at 4641 Reisterstown Road, Baltimore, MD 21215. At approximately 12:00 p.m., WILLOUGHBY was observed arriving at the location driving a tan Lexus bearing Maryland registration 8EZ M96. The agents also saw WILLOUGHBY meet with BROWN. During the meeting between WILLOUGHBY and BROWN, BROWN was observed walking away using his cellular telephone. At 12:09 p.m., BROWN made an outgoing call to OSIOMWAN. During the call BROWN asked "What time you going to be free?" OSIOMWAN responded, "I'm free now." BROWN responded, "Ok, I see you, yeah."

10. After the conversation, surveillance agents observed BROWN and WILLOUGHBY immediately enter the front door to Woodland Motors. After approximately two minutes, WILLOUGHBY was observed exiting the business and meeting with an unknown male. After a period of time, BROWN was observed exiting the business and WILLOUGHBY, BROWN, and several other individuals were observed meeting outside the business. At approximately 12:51 p.m., WILLOUGHBY was observed leaving the location is his vehicle.

11. I believe through my training, and experience that the above described calls detailed WILLOUGHBY meeting with BROWN to obtain an amount of heroin. Once WILLOUGHBY met with BROWN at Woodland Motors, BROWN immediately contacted his

source of supply, OSIOMWAN, over his cellular telephone number 443-813-8898. BROWN learned that OSIOMWAN was already inside the business and took WILLOUGHBY inside the business to obtain the heroin. WILLOUGHBY was observed leaving the location after the transaction and conducting counter surveillance techniques to avoid law enforcement as he drove from the area.

12. On May 1, 2012 at approximately 8:44 p.m., BROWN called WILLOUGHBY. During this call WILLOUGBY was utilizing coded language to inquire if BROWN had obtained any heroin. BROWN replied in coded language that he had and told WILLIOUGBY to come and meet with him in the morning (May 2, 2012).

13. On May 2, 2012 at approximately 10:44 a.m., BROWN received a call from WILLIOUGBY and asked if he was coming to meet BROWN. WILLOUGBY stated that he had, and that he had just "woke up."

14. On May 2, 2012 at approximately 11:20 a.m., investigators monitoring the surveillance camera at Woodland Motors observed a silver Volvo station wagon arrive at Woodland Motors, and park. Investigators observed WILLIOUGBY exit the vehicle.

15. On May 2, 2012 at approximately 11:23 a.m., BROWN received an incoming call from WILLOUGHBY. Upon answering the call, WILLOUGBY told BROWN to come outside.

16. Investigators observed BROWN and WILLOUGBY meet outside Woodland Motors next to WILLOUGHBY and BROWN's vehicles. During the surveillance, BROWN was observed directing WILLOUGBY to the passenger side of his black Mercedes. Surveillance observed WILLOUGBY reach into the passenger side of the vehicle. After a brief period, WILLOUGBY exited the passenger side of the vehicle, made contact with BROWN, and then entered his vehicle and left the area in his silver Volvo. At this time, surveillance units began

following WILLOUGHBY from the location. WILLOUGBY traveled to the area of the unit block of Ginger View Court, Cockeysville, Maryland, where he was observed parking his vehicle.

17. Based on the belief that WILLOUGHBY obtained heroin from BROWN, WILLOUGHBY was arrested. During a search incident to his arrest, law enforcement recovered a folded piece of card board containing an amount of a brown powder substance believed to be heroin. WILLOUGHBY provided positive identification and was released pending chemical analysis.

18. I know, based upon my training and experience, that wholesale suppliers of heroin often provide a sample of heroin to their wholesale customers. The customer then tests the substance and determines whether the quality is sufficient to purchase a larger amount. I believe in this circumstance, the small amount of heroin in WILLOUGHBY's possession was a "sample" of the heroin OSIOMWAN and BROWN had available.

19. On May 2, 2012 at approximately 7:30 p.m., investigators utilized court authorized location technology and learned that OSIOMWAN was in the 5400 block of Northwood Avenue. Investigators also learned that OSIOMWAN had traveled to an area around Philadelphia, Pennsylvania prior to arriving in this area. Upon arriving at the location, investigators observed OSIOMWAN's silver Honda Accord bearing Maryland registration 2A09226, parked in the block. After a brief period, investigators observed OSIOMWAN exit the residence of 5404 Northwood Avenue. OSIOMWAN then entered his Honda Accord and left the area.

20. On May 2, 2012 at approximately 7:40 p.m., BROWN received a call from OSIOMWAN. During this call OSIOMWAN stated that he was traveling to BROWN's residence to meet him.

21. On May 2, 2012 at approximately 7:58 p.m., BROWN made a call to OSIOMWAN and told him that he would be walking around the block. Location technology revealed that OSIOMWAN was in the area of BROWN's residence, 539 Alter Avenue. Location technology also revealed that BROWN was also in the area of 539 Alter Avenue, Baltimore, Maryland.

22. On May 2, 2012 at approximately 9:00 p.m., OSIOMWAN's vehicle returned to 5404 Northwood Avenue, Baltimore. OSIOWMAN was observed entering the location and BROWN was observed seated inside the vehicle. After a brief period, OSIOMWAN exited the location and entered the vehicle. Surveillance was unable to keep OSIOMWAN's vehicle in view.

23. On May 2, 2012 at approximately 9:50 p.m., surveillance units were able to locate OSIOMWAN's vehicle, and observed BROWN in the front passenger seat. At this time, surveillance units followed the vehicle to the parking lot of Reisterstown Plaza located at 6776 Reisterstown Road, Baltimore MD 21215. Surveillance units followed the vehicle and observed it park near the Applebee's parking lot. Surveillance units observed OSIOMWAN exit the vehicle and make contact with several unknown black males who exited a white Lincoln bearing New York registration FPT6753. Investigators learned that the vehicle was a rental vehicle. After a brief period, OSIOWMAN and BROWN left the area in OSIOMWAN's vehicle. Investigators followed the vehicle with New York registration to a carry-out on Reisterstown Road. After a brief period, investigators followed the vehicle to Interstate U.S. 95, and observed

it to travel south. Surveillance units followed this vehicle to the exit for Route 100 where surveillance was terminated. I believe through my training, and experience that OSIOMWAN had met these individuals at this parking lot to provide them with an amount of heroin.

24. On May 3, 2012 at approximately 1:37 p.m., BROWN received a call from an unknown male (UM 7490) utilizing telephone number (443) 813-7490. During this call UM 7490 told BROWN that he would be at a predetermined location. During the call, BROWN stated "Alright, remember what I said right?" UM 7490 stated that he did. I believe that this unknown male was traveling to meet with BROWN to obtain an amount of heroin.

25. On May 3, 2012 at approximately 2:00 p.m., surveillance units observed OSIOWMAN and BROWN enter OSIOMWAN's silver Honda Accord at Woodland Motors. Surveillance units followed BROWN, and OSIOMWAN directly to 5404 Northwood Avenue. OSIOMWAN exited the vehicle, and BROWN stayed inside the vehicle. Investigators observed OSIOMWAN to utilize a key to enter 5404 Northwood Avenue. After a brief period, surveillance units observed OSIOMWAN exit the location and enter the vehicle. Surveillance units then lost sight of OSIOMWAN's vehicle.

26. On May 3, 2012 at approximately 2:15 p.m., BROWN received a call from UM 7490. UM 7490 advised BROWN that he was unable to locate the Giant, but observed a Rite Aid near the Rotunda, where BROWN had directed him. I learned that this location was in the 700 block of West 40th Street. Upon arriving at this location, investigators observed BROWN walking back to OSIOWMAN's vehicle, which was parked in a business parking lot. At this time, I believe BROWN had already conducted the heroin transaction with the UM 7490.

27. On May 3, 2012, the Honorable Stephanie Gallagher, United States Magistrate Judge for the District of Maryland authorized search warrants for 5404 Northwood Avenue, the

alleged stash house; 539 Alter Avenue, BROWN's residence; and 15934 Old York Road, OSIOMWAN's residence.

**28.** At approximately 8:50 p.m., roughly the same time the search warrants were being authorized, OSIOMWAN was observed exiting 5404 Northwood. Law enforcement approached OSIOMWAN and observed him holding a plastic grocery bag. OSIOMWAN was arrested. During a search conducted incident to his arrest, law enforcement found that the plastic bag contained approximately one pound of a substance believed by the agents to be marijuana, and located three fingers of a substance, later field tested and found to be heroin, on his person. A finger is a quantity of heroin, approximately twenty grams, which are wrapped tightly into an egg shape. Based upon my training and experience, I know that "fingers" or "eggs" are generally wrapped in this fashion to permit the heroin to be smuggled into the United States via an internal body carrier.

**29.** The search of 5404 Northwood revealed heroin cutting agents, packaging material, and wrapping material for a kilogram quantity. Law enforcement also located 50 pounds of marijuana.

**30.** The search of 539 Alter Avenue, BROWN's residence, revealed one-half of a finger of heroin, approximately 10 grams. The finger was wrapped in an identical fashion to the fingers recovered from OSIOMWAN. Also located at the residence was $3900 in U.S. Currency.

**31.** On May 3, 2012, at approximately 9:27 p.m., Deidre OSIOMWAN called BROWN. During the call, Deidre told BROWN that "Della" called her (Deidre) and told her (Deidre) that there were a whole bunch of people in the house (a reference to 5404 Northwood). BROWN told Deidre that he (BROWN) would drive by the house.

32. At approximately 9:30 p.m., I was traveling in the Northwood area of Baltimore, close to the area of 5404 Northwood, when I observed BROWN's black Mercedes. The vehicle was being driven by an unknown individual and BROWN was in the passenger's seat. I stopped the vehicle and arrested BROWN. On his person was the cellular telephone that has been the subject of wire interception.

## IV.  CONCLUSION

33. Based on the foregoing, I believe there is probable cause that the Defendants were engaged in a conspiracy to distribute heroin in violation of Title 21 of the United States Code § 846.

TFO Brian Shutt
Drug Enforcement Administration

Sworn to before me this 4 day of May 2012 at 1:42 pm hours.

Stephanie A. Gallagher
United States Magistrate Judge